UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GLENN WILLIS O'STEEN,

                Petitioner,

vs.                                    Case No. 3:17-cv-99-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

In his Petition for Writ of Habeas Corpus (Petition) (Doc. 1),
Petitioner Glenn Willis O'Steen challenges a Columbia County
judgment of conviction for one count of video voyeurism and five
counts of possession of child pornography.  Petitioner raises five
claims of ineffective assistance of trial counsel.  Respondents
filed an Answer to Petitioner for Writ of Habeas Corpus (Response)
(Doc. 27).[1]

Petitioner filed a Reply to Court's Order to Show Cause (Doc.
36).  See Orders (Docs. 8 & 34).  He asked for an evidentiary
hearing and sought the appointment of counsel.  Id.  The Court

_____

[1] The Court hereinafter refers to the exhibits contained in
the Appendix (Doc. 27) as "Ex."  Where provided, the page numbers
referenced in this opinion are the Bates stamp numbers at the
bottom of each page of the exhibit.  Otherwise, the page number on
the particular document will be referenced.

denied without prejudice the request for appointment of counsel and evidentiary hearing.  Order (Doc. 38).  The Court discharged its Order to Show Cause and accepted the reply as timely filed.  Id.  Petitioner moved to expand the record, and the Court granted his motions.  See Orders (Doc. 32 & 48).  Petitioner's additional exhibits may be found in Documents 33 & 49.

## II.  EVIDENTIARY HEARING

The pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  As the record refutes the asserted factual allegations or otherwise precludes habeas relief, Petitioner is not entitled to an evidentiary hearing.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).  Petitioner has not met his burden demonstrating a need for an evidentiary hearing.  Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011), cert. denied, 565 U.S. 1120 (2012).

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus.  See 28 U.S.C. § 2254.  This statute "imposes important limitations on the power of federal courts to overturn the judgments of state

courts in criminal cases." <u>Shoop v. Hill</u>, 139 S.Ct. 504, 506 (2019) (per curiam). The AEDPA statute: "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." <u>Id</u>. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Virginia v. LeBlanc</u>, 137 S.Ct. 1726, 1728 (2017) (per curiam)).

Applying the statute as amended by AEDPA, federal courts may grant habeas relief:

> only when the adjudication of a federal constitutional claim "on the merits in State court proceedings" either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This narrow evaluation is highly deferential, for a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Morrow v. Warden</u>, 886 F.3d 1138, 1146–47 (11th Cir. 2018) (alteration adopted) (internal quotation marks omitted) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). The decision of a state court is "contrary to" federal law only if it "contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." <u>Cummings v. Sec'y for Dep't of Corr.</u>, 588 F.3d 1331, 1355 (11th Cir. 2009) (citation and internal quotation marks omitted). The decision of a state court "involves an unreasonable

application of federal law if it identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply." <u>Id</u>. (citation and internal quotation marks omitted). "The question ... is not whether a federal court believes the state court's determination was correct but whether that determination was unreasonable—a substantially higher threshold." <u>Id</u>. (citation and internal quotation marks omitted).

<u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 898 F.3d 1314, 1321 (11th Cir. 2018), <u>petition for cert. filed</u>, No. 18-8389 (U.S. Mar. 8, 2019).

A district court is charged with reviewing the conclusions of the state court, deferring to the state court decisions, and granting habeas relief only if the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of Supreme Court precedent. "Clear error will not suffice." <u>Virginia v. LeBlanc</u>, 137 S.Ct. at 1728. This formidable barrier to habeas relief is very difficult to overcome as highly deferential AEDPA deference is due, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. Thus, if some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. <u>Meders</u>, 911 F.3d at 1351.

When reviewing a state court's decision, AEDPA deference is not based on the "specificity or thoroughness" of the decision; indeed, the "no-grading-papers, anti-flyspecking rule remains the law of the circuit." Meders, 911 F.3d at 1350. Consequently, a district court is not obliged to "flyspeck the state court order or grade it." Wilson v. Warden, Ga. Diagnostic Prison, 898 F.3d at 1345. Also, AEDPA deference is given even if no rationale or reasoning is provided. Meders, 911 F.3d at 1351 (citing Harrington v. Richter, 562 U.S. 86, 100 (2011)).

A district court should afford a presumption of correctness to state trial and appellate courts' factual determinations. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013). Thusly, "the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." Morrow v. Warden, 886 F.3d 1138, 1147 (11th Cir. 2018), cert. denied, No. 18-6409, 2019 WL 659905 (U.S. Feb. 19, 2019).

The Supreme Court of the United States has imparted its wisdom in employing AEDPA review:

> "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims.'" Wilson v.

> Sellers, --- U.S. ----, 138 S.Ct. 1188,
> 1191-92, --- L.Ed.2d ---- (2018) (quoting
> Hittson v. Chatman, --- U.S. ----, 135 S.Ct.
> 2126, 2126, 192 L.Ed.2d 887 (2015) (Ginsberg,
> J., concurring in denial of certiorari)). The
> Supreme Court recently held that, when the
> relevant state court decision is not
> accompanied by a reasoned opinion explaining
> why relief was denied, "the federal court
> should 'look through' the unexplained decision
> to the last related state-court decision that
> does provide a relevant rationale" and
> "presume that the unexplained decision adopted
> the same reasoning." Id. at 1192. "[T]he State
> may rebut the presumption by showing that the
> unexplained affirmance relied or most likely
> did rely on different grounds than the lower
> state court's decision." Id.

Johnson v. Sec'y, Dep't of Corr., 737 F. App'x 438, 441 (11th Cir.

2018) (per curiam).

If the last state court to decide a federal claim provides an

explanation for its merits-based decision in a reasoned opinion,

the district court simply reviews the specific reasons given by the

state court and defers to those reasons, if they are reasonable.

But, if no explanation is provided, for example, the opinion simply

states affirmed or denied, the district court should "look through"

the unexplained decision to the last related state-court decision

that provides relevant rationale. The district court presumes the

unexplained decision adopted the same reasoning as the lower court,

however, this presumption is not irrebuttable, as strong evidence

may refute it. See Kernan v. Hinojosa, 136 S.Ct. 1603, 1606 (2016)

(per curiam). In an effort to rebut the presumption, the state may

attempt to show the higher state court relied or most likely relied

on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018) (Wilson).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises claims of ineffective assistance of counsel. To prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either of the components).

"For a third of a century[,]" a counsel's performance has been considered deficient only if counsel's performance is outside the wide range of professionally competent assistance. Meders, 911 F.3d at 1348. In order to obtain habeas relief, a counsel's errors must be so great that they actually adversely effect the defense. In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S.Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014), cert. denied, 135 S.Ct. 2126 (2015); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Thus, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004), cert. denied, 544 U.S. 982 (2005). As a result, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One

In ground one, Petitioner raises a claim of the ineffective assistance of trial counsel for failure to seek severance of count one, the voyeurism count, from the remaining counts.  Petition at 5.  Petitioner raised a comparable claim in his Rule 3.850 motion as ground one.  Ex. AA at 20-26.  He claimed: "[n]one of the evidence in that charge was necessary to the proof of the others." Id. at 24.  Petitioner contends he was severely prejudiced by allowing the charges to remain joined for trial.  Id. at 24-25. The trial court denied relief.  Ex. CC at 425-27.  In doing so, the trial court first recognized that failure to sever charges may constitute ineffective assistance of counsel, id. at 425, but the court also explained, in order to obtain relief under a Sixth Amendment claim of ineffective assistance of counsel, a defendant must not only establish deficient performance by counsel, but the defendant must also demonstrate prejudice under the two-pronged Strickland test.  Ex. CC at 425.  Assuming arguendo Petitioner established deficient performance, the court found Petitioner "incapable of demonstrating that absent the error there is a reasonable probability the factfinder would have found the defendant not guilty.  Id. (citation omitted).

In coming to this conclusion, the court relied on the overwhelming evidence of Petitioner's guilt.  Id.  This evidence included the iPod video and audio recording of Petitioner, dressed

in a brown shirt, setting the iPod up for recording in the bathroom. Id. On the recording, Petitioner instructs the children to shower, insisting the female child victim get in the shower before the Petitioner's son, although the son said he would go first. Id. at 425-26. With respect to the remaining counts, Petitioner made numerous admissions, eventually admitting he owned the hard drive and he placed it in the attic. Id. at 426. There was also testimony concerning Petitioner's searches for under age porn. Id. The evidence was stacked against Petitioner, including the officer finding Petitioner's brown shirt in the washing machine with insulation on it, indicating he had been in the attic where he had hidden his hard drive, the DNA evidence linking Petitioner to the hard drive, and all of the digital evidence of child pornography found on the hard drive. Id.

Based on this overwhelming evidence, the court determined any failure of counsel to seek severance did not result in the prejudice required under Strickland. Indeed, the court could not conclude that but for the lack of severance, Petitioner would have been found not guilty of the remaining offenses. As such, the trial court found ground one without merit. The 1st DCA affirmed per curiam. Ex. GG.

Upon review, the 1st DCA affirmed the decision of the trial court without opinion. Id. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this

presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The state court's decision is not inconsistent with Supreme Court precedent. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. As such, ground one is due to be denied.

Alternatively, Petitioner is not entitled to relief on this ground as he has not shown prejudice. More specifically, Petitioner has failed to satisfy the prejudice prong of Strickland as there is no reasonable probability that, but for this alleged deficiency of counsel, the result of the proceeding would have been any different. Due to the substantial evidence of guilt amounted against Petitioner, he "cannot establish that his counsel's failure to sever the charges would have resulted in the jury finding him not guilty." Ex. CC at 427.

### B.  Ground Two

In his second ground, Petitioner raises a claim of ineffective assistance of counsel, asserting his counsel was ineffective regarding Petitioner's right to testify. Petition at 7. The record shows the following. Immediately after the state announced rest and the court stated it planned to dismiss the jury until the following day, defense counsel said:

> MR. BRYANT: Your Honor, after that could
> you address with Mr. Osteen his right to
> testify and I could have him prepared because

he may be one of the first ones that we call
in the morning to get going.

        THE COURT: Absolutely. Anything else
that needs to be addressed after the jury is
out we'll do it.

Ex. K at 747.

After hearing and denying the defense motion for judgment of

acquittal, the court addressed Petitioner concerning his right to

testify:

        Mr. Osteen, let me go ahead and address
you and you heard me tell this jury more than
once that you don't have to prove anything
whatsoever. So far your attorney has done an
excellent job cross-examining the state
witnesses and at this point, however, if you
wish to present evidence you may do so but
you're not required to and that's something
that the jury if you wish for the Court to
instruct them would instruct them of that
again before they go to deliberate.

        Some of the evidence that may be
presented is whether you wish to testify as a
witness and that is something that only you
can decide after you have discussed it with
your lawyer. The thing that I would caution
you about now is that if you decide to testify
yourself, then of course you would be treated
as any other witness and that means that the
state may bring in evidence of any prior
inconsistent statements, that means
impeachment, evidence of any prior convictions
and I don't know whether you may have them or
not. That would be any felony convictions or
any convictions dealing with dishonesty or
falsehood.

Id. at 762.

Defense counsel, Mr. Bryant, said: "Your Honor, Ms. Harden and

I did agree that there is [sic] three prior felonies and five prior

misdemeanor crimes of dishonesty that would be or could be used

- 12 -

against Mr. Osteen." _Id_. at 763. In response, the court instructed:

> THE COURT: I am telling you that if you testify I would suspect that if your attorney doesn't bring it out as anticipatory rehabilitation, that certainly two experienced assistance state attorney's [sic] would cross-examine you on that. So the jury right now all they know is that you have the right to remain silent and you don't have to prove anything. If you take the stand, then the jury may view you differently as a convicted felon with having been convicted in the past as well in crimes involving dishonesty.

> Please understand I am not telling you any of this to in any way deter you from testifying if you wish to do that. I am merely saying these things to you from a perspective of caution so that ultimately you yourself could make the decision that you feel is in your best interest. Since the jury has been discharged, you don't have to give me your decision right now. If you would like to discuss it with your attorneys some more this evening or you would like [to] sleep on it and think about it tonight as well, that would be fine but certainly before the jury comes in tomorrow I would ask you again all of this.

> So do you prefer to make that decision now or wait until tomorrow?

> THE DEFENDANT: Tomorrow.

> THE COURT: Tomorrow. Okay. Very well.

_Id_. at 763-64.

The next day, the defense called Petitioner's father, Glenn Osteen, Sr., as a defense witness. Ex. L at 775. After this witness, Mr. Bryant asked to approach the bench. He informed the court that he thought that was all the defense was going to put on, and asked if the court wanted to put Petitioner on the record. _Id_.

- 13 -

at 786.  The court responded affirmatively and said she wanted to make sure what Petitioner wished to do and whether he was specifically requesting not to testify.  <u>Id</u>.  The court sent the jury out and placed Petitioner under oath.  <u>Id</u>. at 786-87.  The court again advised Petitioner of his right to testify or to elect to remain silent:

>     THE COURT: Very well.    Mr. Osteen, yesterday evening we talked at length about your right to remain silent, but also your right to testify.  That is the right that only you can make that decision as to what you feel may be in your best interest.    Please understand nothing I have said in the past or that I say now should persuade you one way or the other as to what decision you should make. It is just my responsibility to let you know these issues.

>     So knowing that you have the right to either remain silent or your right to testify and become a witness in the case, what would you like to do?

>     THE DEFENDANT: I would say I would have to not testify because the way it was explained to me they can impeach me because I have crimes of dishonesty so I could say that that light is on and they would say I am lying, so it really don't matter.

>     THE COURT: It is not exactly that way. The state would not be able to just come right out and say that, but, yes, under the law if you have those prior convictions you could be impeached and then they could make an argument to the jury regarding those issues.    Again, that's a decision for you to make.    Do you feel comfortable with that decision not to testify?

>     THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Very well. I know that there has been a lot of witnesses that had been disclosed in this case by the defense.

Mr. Bryant, approximately how many?

MR. BRYANT: I believe 23 were actually subpoenaed.

THE COURT: And you had taken the deposition of quite a few witnesses as well.

MR. BRYANT: The state took some of our witnesses but I spoke with the ones that they didn't.

THE COURT: Mr. Osteen, have you and your lawyer had the opportunity to discuss at length this strategy in terms of not presenting anymore witnesses at this time?

THE DEFENDANT: Yes, ma'am. The way he explained it to me there was no need to call experts and all that because he pretty well got it all handled out yesterday with their expert.

THE COURT: Do you feel comfortable with that decision?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you agree with that decision?

THE DEFENDANT: Yes, ma'am.

THE COURT: Very well.

Id. at 787-89.

Before closing argument, the court inquired one last time as to whether Petitioner needed to confer with counsel and if there was anything else that needed to be addressed. Id. at 804-805. Petitioner asked for a moment to confer with his counsel, and the court allowed the conference. Id. at 804. The court inquired as

to whether there was anything else that needed to be addressed, and Petitioner said no. Id. at 804-805. The court asked Petitioner whether he was satisfied with everything Mr. Bryant had been doing, and Petitioner responded in the affirmative, and said "so far." Id. at 805. Closing arguments followed.

In his Rule 3.850 motion, Petitioner claimed his counsel misadvised him not to testify and threatened to walk out of the trial when Petitioner expressed his desire to testify. Ex. AA at 27. The trial court found this contention "clearly refuted by the record." Ex. CC at 427. The court noted defense counsel indicated his intention was to call Petitioner as one of his first witnesses. Id. Thus, the record showed defense counsel "was operating under the assumption and plan that the Defendant may testify." Id.

Additionally, the trial court referenced the long colloquy concerning Petitioner's right to testify and the fact Petitioner was given over-night to further discuss the matter and to contemplate his decision. Id. The trial court found the advice provided "clear and adequate[.]" Id. at 428. The trial court noted that the following day, Petitioner assured the court it was his decision not to testify based upon the state's ability to impeach his testimony. Id. at 428-29. In conclusion, the trial court found Petitioner's claim "refuted by the trial transcript and must be denied." Id. at 429. The 1st DCA affirmed the trial court's decision without opinion. Ex. GG.

In <u>Nejad v. Att'y Gen., State of Ga.</u>, 830 F.3d 1280, 1289-90 (11th Cir. 2016), the Eleventh Circuit opined:

> It is by now abundantly clear that a criminal defendant has a fundamental right to testify on his own behalf at trial. <u>Rock v. Arkansas</u>, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); <u>United States v. Teague</u>, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). That right "cannot be waived either by the trial court or by defense counsel," and a "criminal defendant cannot be compelled to remain silent by defense counsel." <u>Teague</u>, 953 F.2d at 1532.

As reflected in his statement to the trial court the day before trial, Mr. Bryant was going to prepare Petitioner for testifying at trial if he elected to testify, and Mr. Bryant asked the court to inquire as counsel intended that Petitioner would be one of the first witnesses called by the defense. Based on the trial court's inquiry the day before trial and the day of trial, and based on Petitioner and his defense counsel's responses, the defense decided not to call any witnesses other than Petitioner's father. At trial, Mr. Bryant informed the court that he believed Petitioner's father would be the only witness, but he asked if the court wanted to inquire. Petitioner, in response to the extensive inquiry by the trial court, said he decided not to testify based on the state's ability to impeach his testimony.

If there was any misadvice on the part of counsel, the trial court cured it by correctly informing Petitioner about his absolute right to testify on his own behalf and the fact that it was Petitioner's decision, and his alone as to whether to testify or

not.  Importantly, the court allowed Petitioner to seek his attorneys' advice and consider his decision over night, but ultimately it was Petitioner's sole decision as to whether to take the stand.

The record demonstrates Petitioner had three prior felony convictions and five prior misdemeanor crimes of dishonesty.  The court thoroughly explained to Petitioner that, if he took the stand, it should be expected that the jury would be apprised of such as either anticipatory rehabilitation or through the prosecutor cross examining him on that.  Petitioner, after an extensive colloquy with the court, followed up with another colloquy with the court, told the court he decided not to testify.[2]

If there is any reasonable basis for the court to deny relief, the denial must be given deference.  With regard to this claim of ineffective assistance of counsel, AEDPA deference should be given to the state court's decision.  The state court's ruling is well-supported by the record and by controlling case law, Strickland and its progeny.  Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed.  This Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on ground two.

---

[2] If there was any misadvice by counsel, it was certainly cured by the court.

## C.  Ground Three

In his third ground for relief, Petitioner raises a claim of ineffective assistance of counsel for failure to object to the presence of law enforcement and court personnel, such as clerks, state attorneys, and law enforcement in uniforms in the gallery. Petition at 8.  Petitioner raised a comparable claim in his Rule 3.850 motion as ground three.[3]  Ex. AA at 30-31.  He complained the presence of these individuals deprived him of a fair trial, and counsel ignored Petitioner's complaints about the infringement of his rights.  Id.

In denying the Rule 3.850 motion, the court found Petitioner's contentions "incredulous[,]" particularly in light of the fact that such flagrant conduct by spectators and alternate jurors would have been brought to the court's attention by counsel as exhibited by counsel actually bringing to the trial court's attention Petitioner's complaint that he saw members of the audience writing down testimony and Petitioner's fear that these audience members were sharing their notes with witnesses in the hallway.  Ex. CC at 429.  See Ex. J at 529-33.  Of import, the Rule 3.850 judge was also the trial judge, and she pointed out she was in the courtroom

---

[3] In this ground of the post conviction motion, Petitioner alleged a circuit court judge gave a consoling hug to the complainant, an alternate juror gave a thumbs up sign and winked at a state's witness as the witness was testifying, and numerous Sheriff's deputies, court officials, clerk's office employees, and state attorney's office employees wearing badges sat directly behind the state attorney's table.  Ex. AA at 30; Ex. CC at 429.

at all times when the jury was present and was often in the courtroom when they were not present. Ex. CC at 430. The court stated:

> This Court did not observe any such behavior during the Defendant's trial, and if it had, it certainly would have addressed these occurrences because, as the neutral body charged with balancing the Defendant's rights and the State's pursuit of justice, it would have been this Court's ethical duty to take immediate action to remedy such conduct. In fact, it is not the duty of the Defendant's counsel to maintain order in the courtroom; that province falls under the purview of the presiding judge.

Id. The court maintained that it had undertaken a thorough review of the trial transcript, and no such outrageous behavior was referenced in the transcript. Id. The court also noted that courtroom decorum would not have allowed for many of the allegations to have taken place. In particular, decorum forbade anyone from entering the well except the attorneys, the bailiffs, and the witness called to testify. Id. Also, the jury would be present only for the main features of the trial. Id. at 429-30.

Finally, the court recognized criminal trials are public events that may be attended by anyone (except witnesses subject to the rule of sequestration), as long as the attendee observes the proceedings in a non-disorderly, non-disruptive fashion. Id. at 430. Again, the court did not observe any misconduct or inappropriate behavior in the courtroom. As such, the court held the claim was meritless. Id. The 1st DCA affirmed the trial court's decision without opinion. Ex. GG.

In order to prevail on a claim of deprivation of a fair trial in violation of the Sixth Amendment, Petitioner "must show actual or inherent prejudice." <u>United States v. Williams</u>, 731 F. App'x 894, 897 (11th Cir. 2018) (per curiam). Petitioner has not shown either actual or inherent prejudice amounting to denial of a fair trial.

This is not one of those cases of presumed prejudice. <u>See Woods v. Dugger</u>, 923 F.2d 1454, 1459 (11th Cir.) (finding presumed prejudice is reserved for extreme situations, and this case exhibited an extreme situation with pretrial publicity and uniformed prison guards (about half of the gallery) in attendance at a trial concerning an attack on corrections officers at a prison), <u>cert</u>. <u>denied</u>, 502 U.S. 953 (1991). In the instant case, Petitioner alleged "over one dozen Sheriff [sic] Deputies, Court Officials, and employees of the Clerk[']s Office, and State Attorney's Office wearing identification badges were spectators at Defendant's trial for each of its 2 days and were seated directly behind the State Attorney'[s] trial table." Ex. AA at 30. Importantly, court officials, clerk's office employees, and other employees would not be dressed in uniform, except court bailiffs. Although Petitioner may have been familiar with them and knew they were employees, that does not necessarily imply the jury would recognize these individuals as employees of any particular office. Even to the extent some of those in attendance may have been wearing identification badges, again, the jurors would not

necessarily know the substance and nature of the badges. Again, the trial judge was present, and she did not observe any flagrant, questionable or inappropriate behavior or visible signs of bias. She also stated she "is a strict adherer to courtroom decorum" and would not have allowed any disruption caused by those in the gallery. Ex. CC at 430.

In <u>Woods</u>, the Eleventh Circuit explained, it is the presence of uniformed officers (almost half the gallery) in the context of a trial "held in the midst of an angry community" that amounted to prejudice. <u>Woods</u>, 923 F.2d at 1459. Of import, during the Woods trial, the judge also had to admonish the gallery to remain quiet and not make audible responses. <u>Id</u>.

In the case at bar, there was not an unacceptable risk of inherent prejudice. Unlike the case where spectators at a kidnaping and rape trial wore buttons with the words "women against rape," here some spectators were allegedly wearing employment badges. However, these types of badges would not convey an implied message of guilt. <u>Woods</u>, 923 F.2d at 1457. Also unlike the circumstances in <u>Woods</u>, there is absolutely no evidence of a vocal and angry community, expressing audible responses in the gallery. Indeed, the trial court made a specific finding that she was a stickler for courtroom decorum and no such shenanigans took place under her watchful eye. The record demonstrates the trial judge ensured Petitioner's guilt or innocence was decided solely on the basis of evidence developed at trial rather than outside influences

based on a hostile environment in and around the courtroom that would interfere with the trial process. See United States v. Wilson, 634 F. App'x 718, 730 (11th Cir. 2015) (per curiam) (to safeguard a defendant's rights, a court must guard against factors that may undermine fair trial process), cert. denied, 138 S.Ct. 199 (2017).

Pursuant to Wilson, this Court assumes the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The adjudication of the state court, the 1st DCA, resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground three because the state court's decision was not contrary to clearly established federal law, Strickland and its progeny, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Thus, ground three is due to be denied.

With regard to any alleged deficiency of counsel, the court found Petitioner's allegations incredulous with absolutely no record support. The trial judge was in the courtroom the entire time the jury was present and she ensured that courtroom decorum was adhered to and did not allow any untoward behavior or any

- 23 -

exhibitions that would have undermined her ethical duty to maintain a fair and just proceeding. Thus, Petitioner is not entitled to habeas relief on this ground.

### D. Ground Four

In his fourth ground for habeas relief, Petitioner raises a claim of ineffective assistance of counsel for failure to convey a plea offer (but Petitioner would not have taken it because he was not guilty of the crime). Petition at 10. Petitioner explains: "I was not given a plea on 12/19/11 by counsel of less time. However, note I was not guilty and I am truly [innocent] of the crime and I did not own the laptop . . . or the hard drive . . . so it [has] been a miscarriage of justice due to this . . . ." Id. As noted by Respondents, Petitioner, "in no uncertain terms[,]" stated he would not have taken the plea offer, which certainly proves fatal to his claim for relief. Response at 52.

In the plea bargain context, the two-part Strickland test is applicable to claims of ineffective assistance of counsel. Missouri v. Frye, 566 U.S. 134, 140 (2012). Indeed, the negotiation stage is considered "a critical phase of litigation[.]" Id. at 141 (citation omitted). Therefore, it is imperative that defense counsel communicate formal plea offers. Id. at 145. Failure to communicate formal offers amounts to deficient performance. Id. at 147. The more difficult question is whether any prejudice resulted from a defense counsel's breach of duty.

- 24 -

In Petitioner's case, even assuming deficient performance, there can be no prejudice as he has specifically stated he would not have taken the plea offer. Petition at 10. Indeed,

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, **defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.** Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. <u>Cf</u>. <u>Glover v. United States</u>, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

<u>Missouri v. Frye</u>, 566 U.S. at 147 (emphasis added).

Thus, even assuming arguendo Petitioner's counsel performed deficiently by failing to impart to Petitioner a plea offer, Petitioner cannot prevail on his claim of ineffective assistance of counsel because he cannot demonstrate prejudice, that is a reasonable probability he would have accepted the plea offer had he been afforded effective assistance of counsel. As Petitioner has failed to satisfy the prejudice requirement, his ineffectiveness claim is without merit and due to be denied.

Alternatively, the state court's ruling is entitled to AEDPA deference. Petitioner raised a claim in his Rule 3.850 motion that his counsel failed to convey a plea offer "suggesting a sentence of 7 years." Ex. AA at 32. Petitioner claimed that this initial offer would have led to further discussions and a more favorable disposition of less than seven years. Id.

In denying the Rule 3.850 motion, the trial court referenced a July 8, 2013 pre-trial proceeding in which the plea offers were discussed. See Ex. E at 4. The prosecutor stated:

> MS. HARDEN: Your Honor, one additional thing that **I want to place on the record, I believe the previous plea offer may have been unclear from what defense counsel is stating. So, although we have amended the Information to only include now six counts, the plea offer still stands.**
>
> So, the plea offer essentially would be plea as charged to all counts, all six counts. As to Count I, it would [be] five years in the Department of Corrections, and then as to Counts II through VI, it would be ten years in the Department of Corrections. However, both of those would run concurrently at the same time. So, essentially, it would be ten years of incarceration in the Department of Corrections, followed by ten years of sex offender probation.

Id. at 4 (emphasis added).

The court reiterated the terms of the agreement, explaining that it would be a maximum of ten years with credit for time served. Id. Mr. Casey, defense counsel in 2013, stated he had reviewed and discussed the plea offer with Petitioner. Id. at 5.

Mr. Casey said Petitioner apparently thought it might be fifteen years of incarceration, but it was explained to him that the sentences would run concurrently. _Id_. The court advised Petitioner he could plead in his best interest, rather than entering a plea of guilty, if he so elected. _Id_. at 6. When the court asked Petitioner whether he had discussed the offer with his counsel, Petitioner responded: "It's not mine, Your Honor, and I'm not taking it." _Id_.

It is important to recognize that as of September 7, 2011, the amended information charged Petitioner with eighteen offenses, including sixteen counts of sexual performance by a child, possession; child abuse, intentional act; and video voyeurism, child under 16 years of age. Ex. A at 42-47. By the time of the ten-year plea offer, the state had amended the information and reduced the charges to one count of video voyeurism and five counts of possession of child pornography. Ex. C at 460-62. Even with this reduction of charged offenses, Petitioner soundly rejected the state's plea offer of ten years, stating the offenses were not his. The Rule 3.850 court found Petitioner's assertion that he would have accepted an earlier plea offer incredulous based on Petitioner's announcement that the cases were not his and he would not accept a plea. Ex. CC at 431-32.

Of course, Petitioner, in his current Petition, specifically states he would not have accepted a plea offer, even if it had been conveyed, because he was not guilty of the crimes. Petition at 10.

Based on this factor alone, he cannot demonstrate prejudice under Strickland. As noted by the Rule 3.850 court, "there was no reasonable probability that he would have accepted the seven-year plea offer extended to him long before the evidence . . . had been fully developed." Ex. CC at 431.

The 1st DCA affirmed the trial court's decision. Ex. GG. The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Thus, AEDPA deference is due, and Petitioner is not entitled to relief on ground four.

## E. Ground Five

In his fifth and final ground for relief, Petitioner raises another claim of ineffective assistance of counsel, this time alleging counsel's ineffectiveness for failure to prepare for trial, including failure to hire experts and to investigate and move to suppress evidence, particularly evidence that went missing for over a year. Petition at 12. Respondents note that Petitioner exhausted this ground by presenting it in ground five of his post conviction motion, where he alleged "defense counsel made no attempt to investigate, challenge, discredit, or suppress evidence and testimony which had obviously been tampered with, mishandled and/or falsified, or to seek dismissal of any of the charges upon which such evidence was based." Response at 56. Respondents

summarized Petitioner's allegations, noting he complained counsel failed to hire experts or consultants to investigate the handling, collection and assembly of the computer, DNA and fingerprint evidence; failed to move to suppress evidence or dismiss charges; and, failed to challenge the deliberate falsification or manipulation of evidence by the Sheriff's Office. _Id_. Furthermore, Petitioner alleged the source of these errors by trial counsel was founded upon Mr. Bryant's arrest and hospitalization under the Baker Act, sixty days prior to trial, resulting in show cause orders being issued by The Florida Bar on May 13, 2011, and June 19, 2013, weeks before the trial. _Id_. at 56-57.

With regard to any deficiency in counsel's performance, it is imperative to recognize defense counsel was faced with certain irrefutable facts. Petitioner's DNA came back as a match to the DNA evidence from the hard drive. Ex. A at 109-110. Petitioner could not believably refute this fact. The fingerprint evidence was not detrimental to the defense, nor was it helpful. Petitioner made admissions to the police and in open court, making a viable theory of defense exceptionally difficult to formulate. The video evidence, showing Petitioner, in a brown shirt, setting up the iPod in the bathroom, followed up by additional video evidence of him encouraging the female child to shower and the female child entering the bathroom and being filmed pulling her pants down and using the restroom, was extremely harmful to the defense.

The record demonstrates investigators were used by defense counsel.[4] Investigators met with Petitioner. Ex. A at 100. Counsel provided Petitioner with the state's furnished discovery. Id. The defense made a motion for determination of Petitioner's indigence so that defense counsel could seek funding to pay defense experts. Id. at 175-77. The court granted a motion for mental examination by a defense expert. Id. at 180-82.

Defense counsel also filed a motion to resubmit DVDs to FDLE for re-examination because the state advised counsel that it could not find the written "encase" files. Id. at 194-95. The court granted the motion to resubmit the DVDs. Ex. B at 203. The state, on June 30, 2013, filed its Supplemental Discovery Exhibit, which included FDLE Encase Reports. Ex. C at 428.

Defense counsel filed a motion to amend order appointing defense experts and setting caps. Ex. B at 199-200. The court granted the motion. Id. at 201. Defense counsel moved to incur costs for a computer expert, and the court entered an Amended Order for Computer Expert, appointing Ikon Office Solutions as the defense expert to evaluate the relevant computer evidence and render an opinion related to the felony case. Id. at 204, 238-39. The court also authorized the defense to incur costs for computer expert Mulholland Forensics, LLC. Ex. B at 260-61.

---

[4] Of importance, Petitioner had several different defense counsel during the course of the development of the criminal case.

Defense counsel took numerous depositions (and re-deposed a state's witness) and requested transcriptions. Ex. B at 206-207, 236-37, 262-63, 365-66, 367-68, 387-88, 393; Ex. C at 430-31, 433-34, 440-41, 455-56. Defense counsel moved to compel the production of the entire file from former defense counsel, the Siegmeister Law Firm.[5] The court granted the motion. Ex. B at 303. Defense counsel also moved to compel the Ruddell Reports. Ex. C at 423-25. As of July 8, 2013, defense counsel informed the court that he had received all of the evidence from the state that had been requested. Ex. E at 16. Petitioner complained to the court that the encase reports had been lost and should have been sent back to the FDLE to be re-looked at and resubmitted, and this had not been accomplished. Id. at 19. Petitioner assured the court he did not make this complaint against Mr. Bryant. Id. Mr. Bryant explained that he had received all of the reports and there was no need to send the items back to the FDLE as the reports that were originally generated were retrieved and had been provided to the defense. Id. at 20. However, Mr. Bryant did inform the court that Matthew Ruddell would be re-deposed and the defense had all of

---

[5] Complicating matters, Petitioner's former counsel, Jeffrey A. Siegmeister, was elected the State Attorney for the Third Judicial District. He moved to withdraw, and the court granted the motion. Ex. B at 212. Mr. Bryant moved to disqualify Mr. Siegmeister, and the court granted the motion. Id. at 264-65. The Governor assigned William P. Cervone, the State Attorney for the Eighth Judicial Circuit, to handle the investigation and prosecution of Petitioner's criminal case. Id. at 307-310.

the information that the witness used and gathered and there was no need to re-submit the information to FDLE as it had been obtained. Id. at 20-21.

The defense subpoenaed twenty-three witnesses. Ex. L at 788; Ex. H at 253. Defense counsel took depositions, the state took some depositions, and defense counsel spoke with other witnesses. Obviously, there was no lack of experts. Defense counsel sought and were able to obtain funding for experts, including computer experts.[6] Any complaints Petitioner had about the laptop computer were rendered moot because the state relied solely on what was found on the hard drive at trial. To the extent Petitioner complained that the Sheriff's Office planted the hard drive, that complaint is entirely unfounded. Petitioner's DNA was found on the hard drive. Ex. J at 609. In a video interview, Petitioner admitted he owned the hard drive and placed it in the attic. Ex. K at 704-705. Tellingly, the insulation from the attic was found on Petitioner's brown shirt, stuffed, inside out, into the washing machine. Ex. I at 470-72; Ex. J at 538.

With regard to defense counsel's performance, the record shows defense counsel moved to dismiss count two, the child abuse charge. Ex. C at 436-38. The state dropped this charge upon amendment of

---

[6] The defense called one witness: Petitioner's father. Ex. L at 775-85. The defense decided not to call experts based on what was accomplished with cross examination of the state's witnesses. Ex. K at 789. Petitioner agreed with that decision. Id.

the information.[7]  Id. at 460-62; Ex. E at 17 (the trial court recognized that in some respect, the defense motion was successful as the state decided not to proceed with the charge).  Defense counsel moved for release of the DCF Reports, and the court granted the motion.  Ex. C at 447.  Defense counsel moved to prohibit the state from making reference "to any and all statements made during 1st appearance to Judge Tom Coleman" which the court granted in part and denied in part.  Id. at 457-58 (emphasis omitted), 466-67.

In denying the Rule 3.850 motion, the trial court found "[t]he Defendant cannot, after being convicted, now claim that his counsel was ineffective for pursuing a trial strategy that the Defendant was both aware of and agreed with."  Ex. CC at 433.  The court also found Petitioner could not be prejudiced by the laptop as it was not used in the case against him.  Id. at 434.  The trial court found, based on trial testimony, the second search of the apartment pursuant to a warrant was necessary after the initial precursory search.  Id. at 434-35.  The trial court held the state's computer expert's testimony supported the conclusion that law enforcement did not plant the files on the hard drive.  Id. at 435.  During an interview when asked why he was using search terms like underage porn, Petitioner said it was out of curiosity, not sexual gratification.  Ex. K at 721.  The trial court found "the physical evidence and the Defendant's admissions establish that the child

_____

[7] Upon amendment, the information dropped from eighteen counts to six counts.  Ex. E at 3-4.

- 33 -

pornography had not been planted by law enforcement but rather were placed on the hard drive by the Defendant. Ex. CC at 436.

The court also found Petitioner was not prejudiced by the fingerprint evidence, as the latent print lift was of no value. Id. The court found no valid basis existed for defense counsel to object to the admissibility of the hard drive, especially with Petitioner's admissions. Id. at 438. The court found the allegations about the missing DVDs (the encase files) meritless as counsel thoroughly explained that he was re-deposing Matthew Ruddell and re-submission and re-testing was unnecessary. Id. at 440.

The record demonstrates trial counsel's actions were well within the broad range of reasonably competent counsel under prevailing professional norms. Under these circumstances, there is no reasonable probability that, if counsel has acted as Petitioner suggests, the result of the proceeding would have been different.

The state court's decision is entitled to AEDPA deference. The record shows defense counsel adequately prepared for trial. Counsel deposed and subpoenaed witnesses. Petitioner agreed with the defense that Petitioner's father should be the only witness called at trial. Experts were obtained to review and analyze the computer evidence, but the decision was made not to call experts as the defense goals were met through cross examination of the state's expert.

The defense developed its defense strategy, and this strategy is evidenced by the trial record. In opening statement, Mr. Bryant discussed the state's heavy burden of proof and the state's obligation to show intent on the part of the Defendant. Ex. H at 271-72. Mr. Bryant urged the jury to look for serious holes in the state's case. <u>Id</u>. at 273. In closing argument, Mr. Bryant made argument supporting the theory of the defense attacking the holes in the state's case and reminded the jury of the state's burden of proof. Ex. L at 837-51. Mr. Bryant asserted Petitioner's action of downloading the items did not mean he knew their content because that knowledge only came with the opening of the download. <u>Id</u>. at 840. Thus, counsel claimed Petitioner did not knowingly possess the pornography. <u>Id</u>. at 838-39. Counsel argued, at best, the state was relying on circumstantial evidence to show Petitioner knowingly possessed the child pornography because he placed the hard drive in the attic. <u>Id</u>. at 843-44. Counsel presented a persuasive argument that downloading the file does not equate to opening the file and having knowledge of its contents. <u>Id</u>. at 846. He told the jury the only evidence showed the files were put on the computer, not viewed. <u>Id</u>. at 851.

Upon review, the trial strategy did not amount to deficient performance. Not only was defense counsel's performance not deficient, Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u> as there is no reasonable probability that, but for this

alleged deficiency of counsel, the result of the proceeding would have been any different.

Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

Given due consideration, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground five is due to be denied.

Although this Court has found no merit to Petitioner's claim of ineffective assistance of counsel and gives AEDPA deference to the state court's decision, it would be a dereliction of this Court's duty to fail to more specifically address Petitioner's contention Mr. Bryant made errors due to his arrest and hospitalization under the Baker Act, sixty days prior to trial, resulting in show cause orders being issued by The Florida Bar on May 13, 2011, and June 19, 2013, just weeks before the trial. The question arises as to whether these matters, including Mr. Bryant's substance abuse problem, mental health issues, and the distraction and complications caused by his own arrest, had an adverse effect

on his representation of Petitioner, and whether any resulting adverse effect prejudiced Petitioner in the constitutional sense. Ultimately, this Court asks whether Petitioner was denied effective representation that prejudiced him, resulting in an unfair trial due to his counsel's ongoing substance abuse and related health and personal issues.

The record shows the Florida Supreme Court conditionally admitted Casey Bryant on substance abuse issues to the Florida Bar and placed him on probation for a period of four years and six months on July 12, 2010. Ex. U, The Florida Bar's Petition for Contempt and Order to Show Cause at 1-2. On May 6, 2011, The Florida Bar filed a petition for contempt and order to show cause for counsel's failure to check-in three times pursuant to the testing protocol. Id. at 3. On August 30, 2011, the Supreme Court of Florida issued an order directing Mr. Bryant to receive a public reprimand and then extended his probationary period for an additional one-year period. Id. On September 2, 2011, the court extended the probationary period to January 12, 2016. Id.

Thereafter, on May 17, 2013, the Florida Bar, through Bar Counsel wrote:

> On April 26, 2013, police were called to respondent's [Casey Bryant] residence by his live-in girlfriend because respondent was threatening to commit suicide. A Glock handgun was recovered from the respondent's house, as well as several loaded magazines, and 4 boxes of .40 caliber ammunition. When the police arrived, respondent and his

girlfriend had been fighting. Respondent was uncooperative and combative with the police officers during the assessment of the situation. A witness confirmed that respondent and his girlfriend had been fighting and that respondent had thrown golf clubs and a crow bar at his girlfriend while she was sitting inside her vehicle. This incident resulted in respondent being transported to the Baptist Medical Canter [sic] Beaches and a Baker Act form being completed on him. Respondent was arrested for Aggravated Battery-Domestic-With a Deadly Weapon (2nd degree felony), Simple Battery on LEO/Firefighter/EMT (3rd degree felony) and Resisting Officer without Violence (1st degree misdemeanor). . . .

Respondent did not notify The Florida Bar or FLA, Inc. of his criminal arrest. On April 30, 2013, The Florida Bar found out on its own that respondent had been arrested. To date, respondent still has not notified The Florida Bar of his arrest.

On April 30, 2013, the Bar notified FLA, Inc. of respondent's arrest when it requested that respondent be selected for drug testing on May 1, 2013 to include both a random urine and blood test[s]. The urine test came back negative but the blood test came back positive for alcohol. . . .

Respondent has failed to comply with his conditional admission in the following ways: a) immediately inform The Florida Bar of his criminal arrest on April 26, 2013; and b) testing positive for alcohol on May 1, 2013.

. . . .

The Florida Bar is seeking an immediate suspension to protect the public and seeking to revoke respondent's conditional admission to The Florida Bar. Revocation is appropriate for respondent's noncompliance with this Court's Order grating him the privilege to practice law.

Id. at 3-5 (paragraph enumeration omitted). With that, The Florida Bar asked for Casey Bryant's immediate suspension and directed him to show cause why he should not be held in contempt and his conditional admission revoked.[8] Id. at 5-6.

During the course of Casey Bryant's hospitalization, Lewis Fusco, on April 29, 2013, appeared in state court on behalf of Mr. Bryant. Ex. S at 2. Mr. Fusco told the court Mr. Bryant had been hospitalized and the hope was he would soon be released. Id. at 2-3. Mr. Bryant requested Mr. Fusco, on Mr. Bryant's behalf, move to withdraw from the case because Petitioner had written Mr. Bryant and said he was out to destroy Mr. Bryant. Id. at 3. The court informed Mr. Fusco and Petitioner they were in court for a Nelson[9] hearing, but without Mr. Bryant's presence, that matter could not go forward. Id. at 3-4, 8. The court further told Mr. Fusco that Mr. Bryant needed to file his motion to withdraw in writing. Id. at 8-9.

The Rule 3.850 court found Petitioner and Mr. Bryant "made amends" and counsel never filed a motion to withdraw. Ex. CC at 445-46. The court entered an order dismissing Petitioner's request to dismiss counsel as both Petitioner and his counsel appeared in court on May 13, 2013, and Petitioner expressed his satisfaction

---

[8] On June 20, 2013, The Florida Bar Amended its Petition for Contempt and Order to Show Cause, essentially repeating the same information. (Doc. 49).

[9] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).

with the representation of counsel.  Ex. B at 392.  The trial took place from July 22 to July 24, 2013.  Ex. F, G, H, I, J, K, L. Almost a year after the trial, the Supreme Court of Florida, on July 1, 2014, revoked Mr. Bryant conditional admission to the Bar, effective *nunc pro tunc* to September 20, 2013.[10]  Ex. U, July 1, 2014 Opinion.

Upon review, the Florida Mental Health Act, commonly referred to as the Baker Act, provides that, if there is a substantial likelihood that, without care or treatment, a person will cause serious bodily harm to himself or others, the law allows for civil commitment.  Fla. Stat. § 394.463.  The record demonstrates Mr. Bryant had a substance abuse problem and was hospitalized at one point during his representation of Petitioner.  Although Petitioner did not know the specifics of his counsel's hospitalization, he knew his counsel had been hospitalized, and after counsel's hospitalization, Petitioner and his counsel made amends and proceeded to trial.  See United States v. Jarvis, 323 F. App'x 444, 448 (11th Cir. 2009) (finding neither the petitioner nor the court could find any deficiency in counsel's performance although counsel had a substance abuse problem).

In denying the Rule 3.850 motion, the court held:

> Now, despite those representations to this Court, the Defendant alleges that his

---

[10] The order of revocation did not retroactively cover the July 2013 trial dates.

counsel's hospitalization for mental health
and substance abuse caused all of the alleged
deficiencies in performance outlined in his
motion. However, under Florida law, a
defendant may not simply allege that his
counsel was ineffective because of mental
health or substance abuse issues; rather, a
defendant must show how the mental health or
substance abuse resulted in specific acts of
deficient performance. See e.g., Blackwood v.
State, 946 So. 2d 960, 967-68 (Fla. 2006).
The Defendant fails to make this connection.
Instead, he simply alleges that the
allegations of deficient performance
throughout this motion were likely caused by
counsel's mental health and substance abuse
issues. However, those allegations have been
refuted or proven meritless in the body of
this Order. Therefore, even if this Court
accepts the assumption that counsel's alleged
substance abuse and mental health issues were
viable concerns, the conduct complained of did
not amount to ineffective assistance for the
reasons articulated in the applicable portions
of this Order.

Ex. CC at 446.

The 1st DCA affirmed the decision of the trial court. Ex. GG.
Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning
of the trial court in denying the Rule 3.850 motion. The state has
not attempted to rebut this presumption. Deference under AEDPA
should be given to the last adjudication on the merits provided by
the 1st DCA.

The state court's decision is not inconsistent with Supreme
Court precedent. The state court's adjudication of this claim is
not contrary to or an unreasonable application of Supreme Court

law, or based on an unreasonable determination of the facts.  As such, this ground is due to be denied.

Although Mr. Bryant's conduct (including his failure to inform The Florida Bar of his arrest, his failure to take and pass some sobriety tests, and his failure to be forthcoming with the trial judge and Petitioner about his health and stability) should not be condoned, it does not necessarily follow that counsel performed deficiently in the course of his representation of Petitioner.  Indeed, Petitioner has not shown "a deficiency on the part of counsel which [was] detrimental to [Petitioner]" <u>Blackwood v. State</u>, 946 So.2d 960, 968 (Fla. 2006) (per curiam) (quotation and citations omitted).  Counsel's errors, if any, were not so great as to actually adversely effect the defense.  There is no reasonable probability that, but for this alleged deficiency of counsel, the result of the proceeding would have been different.  Confidence in the outcome of the proceedings has not been undermined.  Therefore, Petitioner is not entitled to habeas relief on ground five.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE.**

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.  If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[11]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 5th day of April, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 4/2
c:
Glenn Willis O'Steen
Counsel of Record

---

[11] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.